UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EARL BEATON,

                            Plaintiff,

                    -against-

METROPOLITAN TRANSPORTATION AUTHORITY
NEW YORK CITY TRANSIT,

                            Defendant.

**OPINION AND ORDER**

15 Civ. 8056 (ER)

Ramos, D.J.:

        Earl Beaton ("Plaintiff") brings this action against the New York City Transit Authority

("Defendant" or the "Transit Authority") for allegedly unlawful employment practices.[1]  Plaintiff

alleges that he was wrongfully accused of sleeping while on duty as an agent at a subway station

in Manhattan, and was immediately suspended as a result.  Plaintiff further alleges that he

informed the Transit Authority that he appeared to be sleeping only because of medication he

had to take for his mental illness, but that the Transit Authority decided to terminate his

employment anyway, thus discriminating against him on the basis of his disability.  Plaintiff also

alleges that the Transit Authority failed to provide a reasonable accommodation for his disability,

and that, by terminating him, the Transit Authority was retaliating in response to Plaintiff's

accusations of discrimination.  Plaintiff brings claims under the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law ("NYHRL"), N.Y.

Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C.

---

[1] Plaintiff improperly named Defendant as "Metropolitan Transportation Authority New York City Transit."  As
explained by Defendant, the Metropolitan Transportation Authority is "a separate legal entity and employer subject
to different provisions within the Public Authorities Law."  Memorandum of Law in Support of the Transit
Authority's Motion to Dismiss (Doc. 22) at 1 n.1.  Plaintiff's actual former employer, the New York City Transit
Authority, filed the instant motion to dismiss.  *Id.*

Admin. Code § 8-101 *et seq*.  The Transit Authority now moves to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

## I.  BACKGROUND[2]

Plaintiff was diagnosed with schizophrenia and depressive order in 1985 and was hospitalized for psychotic symptoms in 1987 and 1995.  Compl. ¶¶ 15, 17.  His chronic paranoid schizophrenia symptoms include depression, anxiety, paranoia, mental instability, auditory hallucinations, and the belief that other people can read his mind.  *Id*. ¶ 18.  As a result, Plaintiff's schizophrenia impairs his ability to work, think, communicate, sleep, learn, focus, concentrate, and remain awake.  *Id*. ¶ 19.  Plaintiff has received psychiatric care since his diagnosis and has been successful in treating his mental condition with antipsychotic medication. *Id*. ¶ 16.  Specifically, Plaintiff has been prescribed Fluphenazine for the past ten years, which has permitted him to maintain stable periods without schizophrenia symptoms.  *Id*. ¶¶ 20–21.

Plaintiff began working for the Transit Authority in August 1994 and initially worked as a cleaner.  *Id.* ¶ 14.  In 1995, Plaintiff was hospitalized due to his schizophrenia and disclosed his condition to the Transit Authority.  *Id*. ¶ 23.  The Transit Authority required Plaintiff to undergo a medical examination prior to returning to work, but allegedly "did not engage in an interactive process to address accommodating Plaintiff's disability."  *Id*. ¶ 24.

In July 2000, Plaintiff was promoted to work as a station agent.  *Id*. ¶ 14.  On December 23, 2013, while working the overnight shift as a station agent at the 116th Street subway station

---

[2] The following facts are based on the allegations in the Complaint, Doc. 5, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, as well as documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference.  *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (citations omitted); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

in Manhattan, Plaintiff experienced severe schizophrenia symptoms and took one Fluphenazine pill at 1:00 a.m., and an additional pill three hours later at 4:00 a.m. *Id.* ¶¶ 25–26. Plaintiff had never taken two pills in such a short amount of time and the high dosage made him feel extremely drowsy. *Id.* ¶ 27. Shortly after 5:00 a.m., Plaintiff closed his eyes due to the Fluphenazine side effects he was experiencing. *Id.* ¶ 29. However, Plaintiff maintains that he did not fall asleep and that he conducted a transaction with a customer at 5:00 a.m. *Id.* ¶¶ 29–30. At approximately 5:05 a.m., Plaintiff's supervisor approached Plaintiff and accused him of sleeping on duty. *Id.* ¶ 31. Plaintiff explained to his supervisor that had not been sleeping, but was drowsy because of the Fluphenazine. *Id.* ¶ 32. He showed his supervisor a bottle of Fluphenazine in order to demonstrate that he was indeed prescribed the medication. *Id.* Plaintiff's supervisor immediately suspended Plaintiff from his position. *Id.* ¶ 33.

Plaintiff was entitled to "disciplinary due process rights" by virtue of his membership in Transport Workers Union, Local 100, and the union's collective bargaining agreement. *Id.* ¶ 34. On the same day Plaintiff was suspended, December 23, 2013, the hearing constituting the first step of the disciplinary process was held. During the hearing, Plaintiff presented a letter from his doctor, dated that same day, which verified that Plaintiff suffered from depressive disorder, that he had been taking Fluphenazine three times per day for the past ten years, and that a side effect of Fluphenazine is drowsiness. *Id.* ¶ 36. The letter further indicated that Plaintiff was being treated by physicians every three months and that his last hospitalization occurred over ten years ago. *Id.* ¶ 37. Nevertheless, the Transit Authority "proceeded to seek Plaintiff's termination based on the charge that Plaintiff was sleeping on duty." *Id.* ¶ 38. The hearing officer sustained the disciplinary charge and recommended termination. *Id.* ¶ 39. Plaintiff notes that, even upon hearing that his "perceived misconduct was caused by [his] actions in treating his serious

medical condition, the [Transit Authority] did not engage in an interactive process to determine if there was a reasonable accommodation that could be provided…." *Id.* ¶ 40.

The second step of the disciplinary process was held on December 30, 2013.  Plaintiff testified and submitted the same doctor's letter. *Id.* ¶ 41.  Plaintiff alleges that the hearing officer sustained Plaintiff's termination because she concluded that "[t]en years is plenty of time to become familiar with a medication and its side effects." *Id.*  The third step of the disciplinary process was held the same day, December 30, 2013, at the end of which the charges and penalty of termination were again sustained. *Id.* ¶ 42.[3]

Following his suspension, Plaintiff filed a claim for unemployment insurance benefits with the New York State Department of Labor ("NYSDOL"). *Id.* ¶ 43.  On January 10, 2014, the Transit Authority challenged Plaintiff's unemployment insurance claim on the grounds that he had violated company policy by sleeping on duty. *Id.* ¶ 44.  The Transit Authority allegedly disclosed to NYSDOL (i) that "Plaintiff had not been terminated but was suspended pending discharge," and (ii) that "Plaintiff was on probation for one year and that he could be terminated for operational violations." *Id.* ¶¶ 45–46.  Furthermore, the Transit Authority allegedly disclosed that Plaintiff claimed that he was meditating when initially confronted by his supervisor at the station, and later "admitted sleeping while on duty but indicated that it was due to medication that he had been taking for over ten years." *Id.* ¶ 47.  On January 17, 2014, NYSDOL found that Plaintiff was ineligible for benefits because he had been discharged for misconduct and his

---

[3] The Complaint appears to contain a typo in that it alleges that the third step of the disciplinary process took place on "December 30, 2015." Compl. ¶ 42.  Given that this would-be two-year gap goes unmentioned in any of the parties' papers, and that the arbitration challenging Plaintiff's termination was held on February 13, 2014 and described as the "final step of the disciplinary process," *id.* ¶¶ 49–50, the Court construes the Complaint as alleging that the third-step hearing took place on or around December 30, 2013.

explanation regarding his medication was not compelling, since he had been taking the medication for ten years.  *Id.* ¶ 48.

On February 7, 2014, Plaintiff filed a charge of discrimination against the Transit Authority with the Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 12.

As the final step of the disciplinary process, an arbitration was held on February 13, 2014 and March 14, 2014 to address whether Plaintiff was wrongfully terminated in violation of the collective bargaining agreement.  *Id.* ¶¶ 49–50.  The arbitrator issued a decision on April 18, 2014 (the "Arbitration Decision"), concluding that the Transit Authority had just cause to terminate Plaintiff.  *Id.* ¶ 51.  Thus, according to Plaintiff, he was terminated after demonstrating that "his drowsiness was the result of his disability," and would not have been terminated "but for his disability."  *Id.* ¶¶ 52–53.

The EEOC issued Plaintiff a right to sue letter on July 16, 2015.  *Id.* ¶ 13.  Plaintiff filed the instant action on October 13, 2015, asserting claims for discriminatory termination, failure to provide a reasonable accommodation, and retaliation under the ADA, NYHRL, and NYCHRL. (Doc. 1).  On January 26, 2016, the Transit Authority filed a motion to dismiss the Complaint for failure to state a claim upon which relief could be granted.  (Doc. 20).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must take the allegations of the complaint to be true and "draw all reasonable inferences in favor of the plaintiff."  *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  A plaintiff must make

sufficient factual allegations to show "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* at 678.  A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citation omitted).

## III. DISCUSSION

### A.  Preclusive Effect of Findings in the Arbitration Decision

As an initial matter, the Transit Authority requests that the Court give preclusive effect to

the findings of fact contained in the Arbitration Decision, specifically the findings that Plaintiff

engaged in misconduct, violated a "final warning" stipulation, and that the subsequent discipline

was valid under the collective bargaining agreement.  Memorandum of Law in Support of the

Transit Authority's Motion to Dismiss (Doc. 22) ("Def.'s Br.") at 3–4, 11–13; Reply

Memorandum of Law in Support of the Transit Authority's Motion to Dismiss (Doc. 26) ("Def.'s

Rep.") at 2.  The Transit Authority concedes that the arbitrator did not decide issues of disability

discrimination and that, consequently, Plaintiff is not precluded from bringing discrimination

claims.  *See* Def.'s Br. at 12; Def.'s Rep. at 2.  The Transit Authority instead requests, in essence,

that the Court take judicial notice of the Arbitration Decision or deem it "integral" to the

Complaint, assume the truth of the fact-findings in that decision, and weigh those facts in the

Court's assessment of the plausibility of the allegations in the Complaint.  *See* Def.'s Br. at 3;

Def.'s Rep. at 2.

While the Court is permitted to take judicial notice of the existence of the Arbitration

Decision on a motion to dismiss, it cannot do so to establish the truth of the facts asserted

therein. *Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 185 (E.D.N.Y. 2006) ("A court

may take judicial notice of an opinion issued in a prior proceeding, but 'only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.'") (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).  Even on summary judgment, issue preclusion based on a prior arbitration is "permissible, but not mandatory," and a "post-arbitration proceeding is not 'bound by the arbitrator's factual conclusions,'" although the arbitral decision "'may be admitted as evidence and accorded such weight as the court deems appropriate.'"  *Giles v. City of New York*, 41 F. Supp. 2d 308, 313 (S.D.N.Y. 1999) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 954 F.2d 801, 809–10 (2d Cir. 1992)).  Unsurprisingly, the Transit Authority cites almost exclusively to summary judgment cases to support its position, Def.'s Br. 12–13, where an arbitration decision may carry appropriate probative weight.  *See, e.g.*, *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (describing fact that plaintiff was terminated after arbitration decision, based on "substantive evidence" and made by an "undisputedly independent, neutral, and unbiased" arbitrator, as "highly probative of the absence of discriminatory intent in that termination") (citation omitted).  The Transit Authority provides no persuasive authority for the proposition that fact-finding from an arbitration decision should be given preclusive effect in the context of a motion to dismiss.[4]

---

[4] The one relevant motion-to-dismiss case cited is *Anand v. N.Y.S. Dep't of Taxation & Fin.*, No. 10 Civ. 5142 (SJF), 2012 WL 2357720 (E.D.N.Y. 2012).  There, the court determined that an arbitrator's decision was "integral" to the complaint "because it elucidate[d] the nature of the allegations and disciplinary proceedings against plaintiff."  *Id.* at *2 n.2.  The court exercised this discretion due to its concern that the circumstances surrounding the allegations and disciplinary proceedings were "not entirely clear."  *Id.* at *2.  There is no similar concern in this case.  More importantly, the court in *Anand* nowhere purported to do what the Transit Authority requests here—assume the truth of the arbitrator's fact-findings and preclude the plaintiff from alleging contradictory facts on a motion to dismiss.  The Transit Authority also cites *Ippolito v. TJC Dev., LLC*, which addressed, on a motion to dismiss, whether a prior arbitration rendered a breach of contract claim *res judicata*.  83 A.D.3d 57, 71–73 (N.Y. App. Div. 2011).  Again, that case nowhere discussed whether a court may give preclusive effect to an arbitrator's finding of fact in assessing whether a pleading states a claim for relief.  *Cf. id.* at 72 ("[T]he doctrine of collateral estoppel is inapplicable to the circumstances here….").

The Court declines to give preclusive effect to the findings in the Arbitration Decision. *See Sternkopf v. White Plains Hosp.*, No. 14 Civ. 4076 (CS), 2015 WL 5692183, at *5 n.3 (S.D.N.Y. Sept. 25, 2015) (declining identical request in ADA case). "[T]he factfinding process in arbitration usually is not equivalent to judicial factfinding," *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57 (1974), and thus "parties to an arbitration may not be considering the consequences of judicial issue preclusion when arguing their cases before an arbitrator," *Sternkopf*, 2015 WL 5692183, at *5 n.3. And again, the Transit Authority concedes that the discrimination claims filed before this Court were not brought before the arbitrator. *Cf. Alexander*, 415 U.S. at 60 n.21 (noting possibility that courts afford weight to arbitrations "[w]here an arbitral determination gives *full consideration* to an employee's [discrimination] rights") (emphasis added). The Court will therefore not consider the findings in the Arbitration Decision on this motion. *See Sternkopf*, 2015 WL 5692183, at *5 n.3.

**B. Discriminatory Termination**

<u>1. ADA</u>

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Claims alleging such discrimination are subject to the *prima facie* case framework elaborated by the Supreme Court" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 766 (2d Cir. 2015); *see also Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015). "Under this framework, if a plaintiff can show (1) that she is a member of a protected class, (2) that she was qualified for employment in the position, (3) that she suffered an adverse

employment action, and (4) that there is some minimal evidence supporting an inference that her employer acted with discriminatory motivation, such a showing will raise a temporary presumption of discriminatory motivation." *Dawson*, 624 F. App'x at 766; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). If a plaintiff meets her minimal *prima facie* burden and obtains the temporary presumption of discriminatory intent, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Dawson*, 624 F. App'x at 766; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). If the employer articulates such a reason, the burden then shifts back to the employee to show that the employer's reason was pretext. *Dawson*, 624 F. App'x at 766; *Vega*, 801 F.3d at 83.

At the motion-to-dismiss stage, a plaintiff need only allege facts that provide "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn*, 795 F.3d at 311. Thus, to survive a motion to dismiss, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.*; *see also Osby v. City of New York*, 633 F. App'x 12, 13 (2d Cir. 2016) ("[A]n ADA plaintiff need not plead a *prima facie* case of discrimination. At the pleading stage, the plaintiff has only a 'minimal burden' of alleging facts suggesting an inference of discriminatory motivation. A plaintiff must allege only 'that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'") (quoting *Vega*, 801 F.3d at 85, 87).

At issue is whether Plaintiff alleges facts sufficient to demonstrate that (i) he is a member of the protected class, *i.e.*, whether he suffers from a disability as defined by the ADA, (ii) he

was qualified to perform the essential functions of his job with or without a reasonable accommodation, and (iii) there is a plausible inference he was terminated because of his disability.

    *(a) Disabled Individual*

A three-step approach is used to determine whether an individual has a disability under the ADA. *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 147 (2d Cir. 2002) (applying three-step test as laid out by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624 (1998)), *superseded by statute on other grounds by* 42 U.S.C. § 12102(3)(A).  Plaintiff must establish that (1) he suffers from a physical or mental impairment; (2) the impairment affects a "major life activity;" and (3) the impairment "substantially limits" that major life activity.  *Id.* at 147.  A major life activity is an activity that is "of central importance to daily life," *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (citation omitted), and includes such functions as "learning, reading, concentrating, thinking, communicating, interacting with others, and working," 29 C.F.R. § 1630.2(i)(1)(i).  The term "'substantially limits" is "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and is not meant to be a demanding standard," such that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)–(ii)) (internal quotation marks omitted).  Furthermore, whether an individual's impairment substantially limits a major life activity is a determination that "shall be made without regard to the ameliorative effects of mitigating measures," such as medication or "learned behavioral or adaptive neurological modifications."  42 U.S.C. § 12102(4)(E).

Plaintiff alleges that he has suffered from chronic paranoid schizophrenia, with symptoms including "depression, anxiety, paranoia, mental instability, auditory hallucinations, and the belief that other people can read his mind."  Compl. ¶ 18.  He further alleges that this impairment affects several major life activities, including his "ability to work, think, communicate, sleep, learn, focus, concentrate, and remain awake."  *Id*. ¶ 19.  Without regard to the corrective effects of medication or other measures and in light of the broad standard afforded to ADA plaintiffs, it is at least plausible that Plaintiff's schizophrenia substantially limits his participation in these major activities.  *See* 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should easily be concluded that…at a minimum…schizophrenia substantially limit[s] brain function.").  Plaintiff therefore adequately alleges that he is disabled individual for the purposes of the ADA.[5]

### *(b) Qualified Individual*

"A 'qualified individual' under the ADA is 'an individual with a disability who, with or without reasonable modifications to rules, policies or practices…meets the essential eligibility requirements for…participation in programs or activities provided by a public entity."  *Hargrave v. Vermont*, 340 F.3d 27, 35 (2d Cir. 2003) (quoting 42 U.S.C. § 12131(2)).

The Transit Authority argues that Plaintiff has not alleged his qualifications because "[s]leeping on the job quite obviously prevents an employee from performing the essential functions of his/her job…."  Def.'s Rep. at 3.  This argument was made for the first time in the Transit Authority's reply brief, and it is thus abandoned.  *See In re Cousins*, No. 09 Civ. 1190 (RJS), 2010 WL 5298172, at *3 n.3 (S.D.N.Y. Dec. 22, 2010) ("An argument made for the first time in a reply brief is not properly before the Court.") (citing *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708–09 (2d Cir. 2007)).

---

[5] For the same reasons, the Court concludes that Plaintiff also has a "disability" as defined under the NYSHRL and NYCHRL.  *See* N.Y. Exec. L. § 292(21); N.Y.C. Admin. Code § 8-102(16).  Defendant does not dispute this.

In any event, the argument also misunderstands the "qualification" requirement of a *prima facie* ADA claim.  ADA discrimination claims "require[] only a minimal showing of qualification to establish a *prima facie* claim," and a plaintiff "only needs to demonstrate that she possesses the basic skills necessary for performance of [the] job."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (quoting *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991).  Put another way, a plaintiff with a disability is otherwise qualified "if she is able to perform the essential functions of that job, either with or without a reasonable accommodation," where "essential functions" means those "fundamental duties to be performed in the position in question, but not functions that are merely marginal."  *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99–100 (2d Cir. 2003) (citations and internal quotation marks omitted).

The Transit Authority's argument that Plaintiff was not qualified because he was caught sleeping on December 23 confuses the "analytical distinction between (i) qualification for a job and (ii) disqualification arising from a legitimate, non-discriminatory, reason for an adverse employment decision."  *Sista*, 445 F.3d at 171; *see also Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 29–30 (2d Cir. 1997); *Owens*, 934 F.2d at 409 ("[M]isconduct is distinct…from the issue of minimal qualification to perform a job.").  Here, Plaintiff alleges that he worked for the Transit Authority for close to two decades, including over twelve years as a station agent.  According to the Complaint, the entirety of Plaintiff's employment as a station agent occurred well after his schizophrenia diagnosis and his many years of successful treatment.  *See* Compl. ¶¶ 14–17.  Plaintiff also alleges that he was able to perform his job on the night in question up until at least 5:00 a.m., when he "conducted a transaction on behalf of a customer."  *Id.* ¶ 30.  Based on these allegations, it is plausible that Plaintiff could perform the essential functions of his job, despite

the single incident of misconduct alleged in the Complaint.  Thus, Plaintiff has sufficiently alleged that he is "qualified" within the meaning of the ADA.[6]

   *(c) Adverse Employment Action Because of Disability*

   "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."  *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted); *see also Gorman v. Covidien, LLC*, No. 13 Civ. 6486 (KPF), 2015 WL 7308659, at *11 (S.D.N.Y. Nov. 19, 2015).  According to the Complaint, after a supervisor accused him of sleeping on duty, Plaintiff was immediately suspended and ultimately terminated by the Transit Authority.  Compl. ¶¶ 31, 33, 38.  Plaintiff therefore adequately alleges that he suffered an adverse employment action.

   The closer question is whether the Complaint provides the required "minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn*, 795 F.3d at 311.  Notably, a plaintiff's *prima facie* burden of proving discriminatory intent is *de minimis* even at the evidentiary stage, and thus surviving a motion to dismiss is only a matter of alleging facts making such a showing plausible.  *See Dawson*, 624 F. App'x at 770 ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face even *after* they have survived a motion to dismiss.") (citation omitted).

   Plaintiff's theory here is straightforward:  He appeared to be sleeping on the job because of medication required by his disability, he explained to his supervisor that medication for his

---

[6] These same allegations support Plaintiff's qualifications under both the NYHRL and NYCHRL.  *See, e.g.*, *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 11 N.E.3d 159, 166–67 (N.Y. 2014) (requiring NYHRL plaintiff to allege that she could "perform the essential functions" of her job upon provision of reasonable accommodations) (citations omitted); *id.* at 173 ("Under the State HRL and the City HRL, the relevant inquiry is whether the employee was capable of performing the core functions of the employee's position at the time that the employer refused to accommodate the employee's disability."); *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 254 (E.D.N.Y. 2015) ("NYCHRL mandates that employers provide reasonable accommodations to disabled employees, so long as the employee can still satisfy the 'essential requisites' of the position.") (citing N.Y.C. Admin. Code §§ 8–107(15)(a)–(b)), *appeal dismissed* (2d Cir. 15-1650) (June 18, 2015).

disability caused his eyes to close but was immediately suspended nonetheless, he again explained his disability and medication during the hearing process, and he was still ultimately terminated soon after.  Plaintiff thus maintains that "his disability was the cause of his termination."  Memorandum of Law in Support of Plaintiff's Opposition to the Defendant's Motion to Dismiss (Doc. 25) ("Pl.'s Opp'n") at 16.[7]

These allegations make it at least plausible that the termination was motivated by Plaintiff's disability.  *See Doe v. Norwich Free Acad.*, No. 10 Civ. 1171 (SRU), 2012 WL 5383343, at *4 (D. Conn. Oct. 31, 2012) ("[A] plaintiff may establish a *prima facie* case by showing she was fired 'because of' manifestations of her disability.") (citing *Hogarth v. Thornburgh*, 833 F. Supp. 1077, 1085 (S.D.N.Y.1993)); *cf. McMillan v. City of New York*, 711 F.3d 120, 129 (2d Cir. 2013) ("Here, it is undisputed that McMillan was tardy because of his disability and that he was disciplined because of his tardiness.  In other words, McMillan was disciplined because of his disability.").  And although it would not be enough standing on its own at the summary judgment stage, *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013), the temporal proximity between Plaintiff's disclosure to his supervisor about his disability and medication and Plaintiff's suspension immediately thereafter adds to the plausibility of the inference here.  *See Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) ("As other courts within the Second Circuit have held, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination.") (internal quotation marks omitted) (quoting *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 27 (D. Conn. 2011)).

---

[7] Although Plaintiff alleges that the Transit Authority was put on notice of Plaintiff's disability in 1995 and on "several" other unspecified occasions, Compl. ¶¶ 22–24, there are no allegations in the Complaint to support a plausible inference that the disciplinary actions starting on December 23, 2013 were in any way a response to that notice from nearly two decades ago.

Accepting all its allegations as true, then, the Complaint meets the minimal threshold that Plaintiff faces at this stage.  The Transit Authority may very well have evidence of non-discriminatory reasons for the termination—such as showing that Plaintiff engaged in fireable misconduct[8] or violated a "final warning" agreement[9]—but such evidentiary disputes are not appropriate at this stage of the case.

### 2. NYHRL and NYCHRL

For the same reasons that the ADA discrimination claim may proceed, Plaintiff also states viable claims for disability discrimination under both the NYHRL and the NYCHRL.  *See Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 11 N.E.3d 159, 166 (N.Y. 2014) ("The employee's complaint states a prima facie case of discrimination under both the State HRL and City HRL if the employee suffers from a statutorily defined disability and the disability caused the behavior for which the employee was terminated.") (citations omitted).

### C.  Failure to Provide Reasonable Accommodation

### 1. ADA

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation

---

[8] None of the ADA, NYHRL, or NYCHRL "immunize[s] disabled employees from discipline or discharge for incidents of misconduct in the workplace," even if that misconduct is a "manifestation" of a disability.  *Krasner v. City of New York*, No. 11 Civ. 2048 (PGG), 2013 WL 5338558, at *12–13 (S.D.N.Y. Sept. 23, 2013) (collecting cases), *aff'd*, 580 F. App'x 1 (2d Cir. 2014); *see also McElwee v. Cty. of Orange*, 700 F.3d 635, 641 & n.3 (2d Cir. 2012) ("[U]nder the ADA, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability.").

[9] *See, e.g.*, *Klaper v. Cypress Hills Cemetery*, No. 10 Civ. 1811 (NGG), 2014 WL 1343449, at *7 (E.D.N.Y. Mar. 31, 2014) ("Even if Plaintiff could establish his prima facie case under the ADA, Plaintiff's violation of the last chance stipulation constituted a legitimate, nondiscriminatory justification for [defendant's] decision to terminate his employment.") (citations omitted), *aff'd*, 593 F. App'x 89 (2d Cir. 2015); *Mayo v. Columbia Univ.*, No. 01 Civ. 2002 (LMM), 2003 WL 1824628, at *6 & n.7 (S.D.N.Y. Apr. 7, 2003) (collecting cases).

would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).  To state a *prima facie* case for failure to provide a reasonable accommodation under the ADA, a plaintiff must demonstrate that (1) she has a disability; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *See McMillan*, 711 F.3d at 125–26 (citing *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).

 Plaintiff's accommodation claims fail for two related reasons.

 *First*, even taking all allegations as true, the Transit Authority did not know of the need for an accommodation prior to December 23, 2013.  The Complaint contains no allegation, for example, that Plaintiff ever requested an accommodation for his disability at any time.  *See, e.g.*, *Dooley v. Jet Blue Airways Corp.*, 636 F. App'x 16, 18–19 (2d Cir. 2015) ("[A]n employer cannot refuse to make an accommodation that it was never asked to make.") (citations and internal quotation marks omitted); *Rosario v. City of New York*, No. 11 Civ. 9008 (PAC) (SN), 2013 WL 782408, at *10 (S.D.N.Y. Jan. 9, 2013) (dismissing failure to accommodate claim where plaintiff "[had] not alleged that defendants were aware of the need for reasonable accommodation before his request"), *report and recommendation adopted*, 2013 WL 782581 (S.D.N.Y. Mar. 1, 2013); *Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 499–500 (S.D.N.Y. 2009) (collecting cases).  It is true that in cases in which the disability was known or obvious, and the employer thus knew or reasonably should have known of the need for an accommodation, an employee need not issue an express request for accommodation. *See, e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008); *Felix v. N.Y.C. Transit Auth.*, 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001), *aff'd*, 324 F.3d 102 (2d Cir. 2003).

16

But the allegations here do not support an inference that the Transit Authority knew or should have known that Plaintiff was disabled and required an accommodation.  While it is alleged that the Transit Authority has known about Plaintiff's disability since 1995, the Complaint otherwise alleges that Plaintiff was able to perform as a station agent from 2000 to 2013 without incident, that he was treated by physicians every three months and had not been hospitalized for at least ten years, and that he has used Fluphenazine for a decade to maintain stable periods without schizophrenia symptoms.  Compl. ¶¶ 20–24, 37.  Plaintiff not only fails to identify a single example of a reasonable accommodation, he also fails to describe a single incident prior to December 23, 2013 that would have put the Transit Authority on notice any accommodation was ever needed.  The upshot is that the Complaint simply fails to allege that the Transit Authority refused to provide a reasonable accommodation prior to December 23, 2013.  *See Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing accommodation claim where plaintiff failed to allege that "she needed, requested, or was refused an accommodation") (citation omitted); *MacEntee v. IBM (Int'l Bus. Machines)*, 783 F. Supp. 2d 434, 444 (S.D.N.Y. 2011) (dismissing accommodation claim where allegations showed defendant was "not given the opportunity to offer, or refuse" an accommodation and "had no actual or constructive knowledge of the need for any accommodations"), *aff'd*, 471 F. App'x 49 (2d Cir. 2012); *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 350 (S.D.N.Y. 2009) (dismissing accommodation claim because complaint contained "no factual allegations relating to a failure on the part of [defendants] to provide reasonable accommodation for [plaintiff's] alleged disability"); *see also Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 139 (E.D.N.Y. 2015) (granting summary judgment against employee who acknowledged that he was "performing all the essential functions of the job…without any accommodation," such that

17

no "rational factfinder could conclude that plaintiff needed a reasonable accommodation"); *Johnson v. Maynard*, No. 01 Civ. 7393 (AKH), 2003 WL 548754, at *6 (S.D.N.Y. Feb. 25, 2003) (same).

*Second*, having failed to identify the need for, or refusal of, an accommodation prior to December 23, the sole basis for Plaintiff's claim is that the Transit Authority should have accommodated him by showing more leniency in response to his misconduct on December 23. But such an allegation alone cannot form the basis of a failure to provide reasonable accommodation. *See McElwee v. Cty. of Orange*, 700 F.3d 635, 641 & n.4 (2d Cir. 2012) ("A requested accommodation that simply excuses past misconduct is unreasonable as a matter of law."); *Canales-Jacobs*, 640 F. Supp. 2d at 500 ("Courts have, in fact, rejected the notion that a requested accommodation that simply excused misconduct and poor work performance can be 'reasonable.'") (citations omitted); *see also Fahey v. City of New York*, No. 10 Civ. 4609 (ILG), 2012 WL 413990, at *9–10 (E.D.N.Y. Feb. 7, 2012) (rejecting claim where plaintiff's requested "accommodation" was "essentially to receive a penalty…other than his termination").  Indeed, it is hard to fathom what type of accommodation could actually prevent Plaintiff from taking too much medication in too short a timeframe.  *Cf. Johnson*, 2003 WL 548754, at *6 ("[The employer] should not be charged with a failure to make a reasonable accommodation when plaintiff neglected to take her medication.  After all, an employer cannot be expected to ensure that an employee is properly following her doctor's orders."); Compl. ¶ 29 (acknowledging that Plaintiff's taking second pill at 4:00 a.m. caused him to "close[] his eyes").

The Transit Authority's motion to dismiss the accommodation claims is granted.

2. NYHRL and NYCHRL

Aside from a broader definition of "disability" under state law, a plaintiff's "state law reasonable accommodation claim is 'governed by the same legal standards as federal ADA claims.'" *Cody v. Cty. of Nassau*, 345 Fed. App'x 717, 719 (2d Cir. 2009) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004)).  For the same reasons that the ADA accommodation claim fails, then, the accommodation claim under the NYHRL is dismissed. *Hazen v. Hill Betts & Nash, LLP*, 92 A.D.3d 162, 170 (N.Y. App. Div. 2012) (holding that, even where "misconduct was caused by [plaintiff's disability]," defendant was "not required to excuse that misconduct as an accommodation" under the NYHRL).  And even under the more generous ambit of the NYCHRL, leniency in the face of misconduct cannot form the basis of a reasonable accommodation claim.  *See Cuttler v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, No. 10 Civ. 296 (DAB), 2012 WL 1003511, at *9 (S.D.N.Y. Mar. 23, 2012) ("Unfortunately for Plaintiff, the NYSHRL and NYCHRL do not require Defendant to excuse her admitted workplace misconduct as an accommodation of her disability.").[10]

Plaintiff's three accommodation claims are dismissed.

**D.  Retaliation Claims**

Plaintiff further claims the Transit Authority violated the ADA, NYHRL, and NYCHRL by retaliating against Plaintiff for challenging his discriminatory termination.

---

[10] Plaintiff's argument, Pl.'s Opp'n at 19, that the Transit Authority's failure to engage in an interactive process is *alone* sufficient for liability under the NYCHRL has been rejected by the New York Court of Appeals.  *See Jacobsen*, 11 N.E.3d at 169–70 & n.2 (holding that under both the NYHRL and NYCHRL "the employee cannot obtain a favorable jury verdict or summary judgment solely based on the employer's failure to engage in an interactive process"); *see also LeBlanc v. United Parcel Serv.*, No. 11 Civ. 6983 (KPF), 2014 WL 1407706, at *18 n.14 (S.D.N.Y. Apr. 11, 2014).  Furthermore, while Plaintiff is correct that the NYCHRL puts the burden on the employer to prove that a proposed accommodation would impose undue hardship, *see Jacobson*, 11 N.E.3d at 167, that allocation of the burden of proof does not vitiate the requirement that Plaintiff allege that an accommodation was actually refused by the Transit Authority in this case.  *Cf., e.g., LeBlanc*, 2014 WL 1407706, at *17 (listing the employer's refusal to accommodate as part of NYCHRL plaintiff's *prima facie* case) (citing *McMillan*, 711 F.3d at 125–26).

To establish a *prima facie* case of retaliation under the ADA and NYHRL, Plaintiff must show that "(1) the employee was engaged in an activity protected by [the statutes], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *14 (S.D.N.Y. Feb. 5, 2016) (quoting *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)) (internal quotation marks omitted); *see also Littlejohn*, 795 F.3d 297 at 315–16. Once again, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements…." *Littlejohn*, 795 F.3d at 316. "Moreover, in the absence of a direct link between a complaint and retaliatory action, plaintiffs may demonstrate the necessary causal connection 'indirectly, by showing that the protected activity was followed closely by discriminatory treatment [in the form of an adverse employment action].'" *Moore*, 2016 WL 825001, at *14 (quoting *Littlejohn*, 795 F.3d at 319).

"In order to prevail on a NYCHRL retaliation claim, Plaintiff 'must show that she took an action opposing her employer's discrimination…and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Id.* (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)); *see also Mayling Tu v. OppenheimerFunds, Inc.*, No. 10 Civ. 4971 (PKC), 2012 WL 516837, at *11 (S.D.N.Y. Feb. 16, 2012) (noting that the NYCHRL does not require evidence of an adverse employment action, only employer conduct likely to deter person from opposing discrimination) (citation omitted). "The NYCHRL analysis should proceed 'with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the

fact that a jury is generally best suited to evaluate the impact of retaliatory conduct.'"  *Moore*,

2016 WL 825001, at *14 (quoting *Mihalik*, 715 F.3d at 112).

Plaintiff alleges that he engaged in two different protected activities.  First, Plaintiff

alleges that he "engaged in protected activities when he opposed the Defendant's decision to

suspend and ultimately terminate" him based on conduct caused by his disability, *i.e.*, when he

initiated the grievance process on December 23, 2013.  Compl. ¶ 35; *see also* Pl.'s Opp'n at 23.

Second, Plaintiff argues that his filing a charge for discrimination with the EEOC on February 7,

2014 was a protected activity that caused the Transit Authority to retaliate by terminating him.

Compl. ¶ 12; Pl.'s Opp'n at 24.  Both activities are protected because, as alleged, they

constituted complaints of illegal discrimination.  *See, e.g.*, *Lovejoy-Wilson v. NOCO Motor Fuel,*

*Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("[Plaintiff's] filing of a complaint with the EEOC is an

activity protected by the ADA.") (citing *Sarno*, 183 F.3d at 159); *Alleyne v. NAACP Legal Def.*

*& Educ. Fund, Inc.*, No. 14 Civ. 6675 (MKB), 2015 WL 6869731, at *9 (E.D.N.Y. Nov. 6,

2015) ("Filing either a formal or informal complaint challenging discrimination is considered a

protected activity for purposes of retaliation claims under…the ADA.") (citing *Treglia v. Town*

*of Manlius*, 313 F.3d 713, 717, 720 (2d Cir. 2002)); *cf. Ashok v. Barnhart*, 289 F. Supp. 2d 305,

314 (E.D.N.Y. 2003) ("[T]he filing of EEOC claims or union grievances are protected activities

under Title VII….").[11]

---

[11] Plaintiff's opposing of his suspension by filing a grievance would not constitute a protected activity if that
opposition did not include an allegation of disability discrimination.  *See, e.g.*, *Sternkopf*, 2015 WL 5692183, at *9
n.12; *Marecheau v. Equal Emp't Practices Comm'n*, No. 13 Civ. 2440 (VEC), 2014 WL 5026142, at *8 (citations
omitted).  The Complaint does not make it clear whether such an allegation was made.  It is alleged, however, that
Plaintiff's central defense during the grievance process was a doctor's letter describing his disability and medication
needs.  Compl. ¶ 36.  From this allegation, the Court can draw the reasonable inference that Plaintiff grieved his
suspension on the ground that it wrongfully penalized him for conduct caused by his disability and was thus
discriminatory.  That inference provides sufficient "plausible support" to the "reduced" *prima facie* requirement of
pleading protected activity, at least at this stage.  *See Littlejohn*, 795 F.3d at 316.

The alleged causal connection between the two activities and adverse employment action is far less clear. *See Holcombe v. U.S. Airways Grp., Inc.*, 976 F. Supp. 2d 326, 348–49 (E.D.N.Y. 2013) ("Although the elements of a *prima facie* case for retaliation differ slightly between the ADA, NYSHRL, and NYCHRL, under all three statutes Plaintiff must show a causal connection exists between the alleged adverse action and the protected activity….") (citing *Treglia*, 313 F.3d at 719; *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011)).  The only possible adverse employment action here was the decision to terminate Plaintiff.  *Sista*, 445 F.3d at 169 ("[T]here is no question…that termination is an adverse employment action.").[12]  But the allegations in the Complaint are not clear as to when the final termination decision took place.  Three scenarios are possible.  *First*, if the decision took place *before* both protected activities, Plaintiff's retaliation claims would fail because by definition the termination would not be retaliatory in nature.  *See supra* n.12.  *Second*, if the decision to terminate occurred *after* Plaintiff initiated the disciplinary process (even if *before* the EEOC filing), it is plausible that his grievance of an allegedly discriminatory suspension caused the Transit Authority to retaliate by escalating the suspension into termination, and thus Plaintiff could state a viable retaliation claim based on his initiation of the grievance process (but not the EEOC filing).  *See* Compl. ¶ 38 (alleging that "Defendant proceeded to seek the Plaintiff's termination" at Step I disciplinary hearing).  *Third* and finally, although its allegations border on the contradictory in this respect, the Complaint can also be read to suggest that the Transit

---

[12] The decision to suspend Plaintiff cannot constitute the adverse employment action here because, according to the Complaint, that decision preceded both protected activities.  *See, e.g.*, *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 289–90 (S.D.N.Y. 2013) ("[Plaintiff] fails at the threshold stage because she is unable to show that an adverse employment action was taken *in response to* protected activity….[Plaintiff's] complaint after this point cannot plausibly suggest retaliation because the formal disciplinary process had already commenced before her complaint was made.  And indeed, '[e]mployers need not suspend previously planned [actions]' once a plaintiff has engaged in protected activity.") (emphasis added) (citation omitted) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

Authority had not yet made a final decision to terminate Plaintiff at the time he filed his EEOC claim.  *See* Compl. ¶¶ 45–46 (alleging that, on January 10, 2014, the Transit Authority told the New York State Department of Labor that Plaintiff "had not been terminated but was suspended pending discharge," and that Plaintiff was "on probation for one year and that he could be terminated for operational violations"); *but see id.* ¶ 38 (alleging that "Defendant proceeded to seek the Plaintiff's termination" at Step I disciplinary hearing); *id.* ¶¶ 41–42 (alleging that Plaintiff's termination was sustained at both Step II and Step III disciplinary hearings); *id.* ¶ 50 (alleging that the arbitration was meant to address "whether Plaintiff's termination was wrongful").  On this third and final version of the timeline, it was only *after* Plaintiff filed his EEOC charge on February 7, 2014 that the Transit Authority "chose to proceed with its decision to terminate the Plaintiff at the arbitration on February 13, 2014 and March 14, 2014."  Pl.'s Opp'n at 24.  Here again, it is at least plausible that Plaintiff's EEOC charge caused the Transit Authority to retaliate by escalating Plaintiff's suspension into final termination.

The Court must draw all reasonable inferences in Plaintiff's favor in resolving this motion.  Despite the inconsistent timeline described in the allegations, the contours of a viable retaliation claim are discernable, if barely, based on allegations of discrimination made both during the grievance process and in the EEOC charge.  The motion to dismiss Plaintiff's retaliation claims is denied.  *See Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301, 314 (E.D.N.Y. 2015) ("The NYSHRL's protections for disabled workers are generally viewed as co-extensive with the ADA, while the NYCHRL's protections are greater still….[Since] plaintiff has stated a retaliation claim under the ADA, he has also stated one under the NYSHRL and NYCHRL.") (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277–78 (2d Cir. 2009)).

**IV. CONCLUSION**

Defendant's motion is GRANTED as to the accommodation claims (first, fifth, and ninth causes of action).  The motion is DENIED as to all other claims.  The Clerk of the Court is respectfully directed to terminate the motion.  Doc. 20.

It is SO ORDERED.

Dated:    June 15, 2016
          New York, New York

                                               _____
                                               Edgardo Ramos, U.S.D.J.