USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 3/2/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EARL BEATON,

                Plaintiff,

-against-

METROPOLITAN TRANSPORTATION AUTHORITY
NEW YORK CITY TRANSIT,

                Defendant.

**OPINION AND ORDER**

15 Civ. 8056 (ER)

---

Ramos, D.J.:

Earl Beaton ("Plaintiff") brings this action against the New York City Transit Authority ("Defendant" or the "Transit Authority") for allegedly unlawful employment practices.[1] Plaintiff alleges that he was wrongfully accused of sleeping while on duty as an agent at a subway station in Manhattan, and was immediately suspended as a result. Plaintiff further alleges that he informed the Transit Authority that he appeared to be sleeping only because of medication he had to take for his mental illness, but that the Transit Authority decided to terminate his employment anyway. Plaintiff brought claims of discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

On June 15, 2016, the Court granted in part and denied in part the Transit Authority's motion to dismiss, dismissing Plaintiff's accommodation claim but allowing Plaintiff's

---

[1] Plaintiff improperly named Defendant as "Metropolitan Transportation Authority New York City Transit." As explained by Defendant, the Metropolitan Transportation Authority is "a separate legal entity and employer subject to different provisions within the Public Authorities Law." Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1") (Doc. 45) at 1 n.1. Plaintiff's actual former employer, the New York City Transit Authority, filed the instant motion for summary judgment. *Id.*

discrimination and retaliation claims to move forward. The Transit Authority now moves for summary judgment on the remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendant's motion for summary judgment is GRANTED.

## I. BACKGROUND[2]

### A. Plaintiff's Disability and Disciplinary Charges

The Court assumes familiarity with the record and its prior opinion, which details the facts and procedural history of this case, and discusses here only those facts necessary for its disposition of the instant motion. *See Beaton v. Metro. Transportation Auth. New York City Transit*, No. 15 CIV. 8056 (ER), 2016 WL 3387301 (S.D.N.Y. June 15, 2016). As relevant here, Plaintiff was diagnosed with schizophrenia and depressive order in 1985. Plaintiff's 56.1 Counterstatement of Undisputed Facts ("Pl.'s Counter 56.1"), Doc. 54, ¶ 172. His chronic paranoid schizophrenia symptoms include depression, anxiety, paranoia, among others, which impair his ability to work, think, communicate, sleep, concentrate, and remain awake. *Id.* ¶¶ 173–74. To control these symptoms, Plaintiff was proscribed Fluphenazine in 1995 and, though Plaintiff has tried various medications over the years, he has always returned to taking Fluphenazine because it "best[] stabilizes his mental illness and alleviates his symptoms." *Id.* ¶¶ 178–81.

Plaintiff began working for the Transit Authority in August 1994 and initially worked as a station cleaner. *Id.* ¶ 42. In 1995, Plaintiff was hospitalized due to his schizophrenia and

---

[2] The following facts are drawn from Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def.'s. 56.1"), Doc. 45, and Plaintiff's Rule 56.1 Counter-Statement in Opposition to Defendant's motion for summary judgment ("Pl.'s. Counter 56.1"), Doc. 54, and the parties' supporting submissions. For ease of reference, the Court will cite to Plaintiff's Rule 56.1 Counter-Statement in Opposition, which contains both Defendant's assertion and Plaintiff's response.

2

disclosed his condition to the Transit Authority. *Id.* ¶¶ 167, 175–76. The Transit Authority required Plaintiff to undergo a medical examination prior to returning to work. *Id.* ¶ 46. In July 2000, Plaintiff was promoted to the position of station agent. *Id.* ¶ 43. In the years that followed, Plaintiff received 35 disciplinary charges, the majority of which occurred while Plaintiff was employed in that position. *Id.* ¶ 88. Many of these disciplinary charges stemmed from operational violations and resulted in no less than eight suspensions. *Id.* ¶ 92; Declaration of Cynthia Davis ("Davis Decl."), Doc. 47, Ex. J. The Court discusses only the most recent and relevant of those actions here.

In October 2012, Plaintiff was subject to two disciplinary actions for operational violations. In settlement of those disciplinary charges, Plaintiff and the Transit Authority entered into a settlement stipulation modifying the penalty of dismissal to a 30-day suspension and final warning. Davis Decl., Ex. M. Subsequently, on July 2, 13, and 18, 2013, Plaintiff was charged with three separate violations for improper performance, customer complaints, and operational violations. Davis Decl. ¶¶ 54–58; Pl.'s Counter 56.1 ¶¶ 102, 106, 108. On December 10, 2013, these disciplinary actions culminated in another stipulation and agreement between the parties. This time, however, the agreement not only modified the penalty of dismissal to a 30 day suspension and final warning on all operational violations, but it also placed Plaintiff under a one year probationary period, during which time the parties agreed that "any further Operational violation(s) shall lead to dismissal." Davis Decl., Ex. A; Pl.'s Counter 56.1 ¶ 109. Notably, at no point following his promotion to station agent in 2000 did Plaintiff ever inform his new supervisors about his illness, seek an accommodation for his illness, or claim that the repeated disciplinary actions were motivated by discriminatory animus. Pl.'s Counter 56.1 ¶¶ 167–69. That soon changed.

3

On December 23, 2013 at approximately 11:00 p.m., while working the overnight shift as a station agent at the 116th Street subway station in Manhattan, Plaintiff experienced schizophrenic symptoms. *Id.* ¶¶ 110, 182. Despite having already taken his normal dose of medication for the day, Plaintiff's symptoms did not improve and he took an additional dose of Fluphenazine at 4:00 a.m. *Id.* ¶ 183. Plaintiff had never taken two pills in such a short amount of time. *Id.* ¶ 184. At approximately 5:00 a.m., as a side effect of the Fluphenazine he had taken, Plaintiff began to feel drowsy and closed his eyes for "just a few moments." *Id.* ¶¶ 14, 185. However, Plaintiff maintains that he did not fall asleep and that he only attempted to "regain his composure." *Id.* At approximately 5:05 a.m., Plaintiff's supervisor, Nayyirah Abdullah, approached Plaintiff and accused him of sleeping on duty. *Id.* ¶ 115. According to Plaintiff, he showed Abdullah his bottle of Fluphenazine and explained that he had not been sleeping, but was drowsy because of the double dose of medication he had taken. *Id.* ¶ 186.

Abdullah, in contrast, contends that she observed Plaintiff sleeping and took pictures of Plaintiff that show him in the station booth with his eyes closed and resting his head in his hand. *Id.* ¶ 11–12; Declaration of Nayyirah Abdullah ("Abdullah Decl."), Doc 48, ¶¶ 7, 10; Davis Decl., Ex. S (showing photographs of Plaintiff with his eyes closed and his head in his hand). Abdullah further avers that Plaintiff apologized for sleeping and asked if he could "get a pass this time" because he "had a bad record" and was concerned that he would be fired. Pl.'s Counter 56.1 ¶ 116; Abdullah Decl. ¶ 12. Abdullah then asked Beaton to write a statement concerning the incident, and, although Plaintiff claims Abdullah dictated the statement to him, Abdullah asserts that it was Beaton who wrote that he "was meditating." Pl.'s Counter 56.1 ¶¶ 17, 119–20. At the end of the interaction Abdullah confiscated Plaintiff's badge and suspended him from his position. *Id.* ¶ 116; Abdullah Decl. ¶ 12. Abdullah immediately memorialized her interaction

with Plaintiff. *Id.* Contrary to Plaintiff's claims, Abdullah denies that Plaintiff informed her that he was taking medication to treat a medical condition and asserts that such a revelation would not have altered her decision to "write him up and hold him out of service" because she lacks the "authority to excuse misconduct or make a decision regarding the appropriate action to be taken." Abdullah Decl. ¶¶ 13–14.

That is principally because the Transit Authority's Rules of Conduct prohibit employees from sleeping on duty, and classifies such behavior as a "major operational violation [that] subjects all Division of Station Operation employees to dismissal." Davis Decl. ¶ 6, n.2; *id.* Ex. F, Rule 11(e). Indeed, in an effort to combat media reports of workers sleeping on duty and to ensure quality customer service, in 2005 the Transit Authority issued a notice to station operation employees reiterating Rule 11(e)'s prohibition and stressing that "[a]ny employee found sleeping on duty will be subject to dismissal from service." Davis Decl. ¶ 29; *id.* Ex. G. That notice remains in effect and all employees found sleeping on duty are, as a matter of course, held out of service and subject to dismissal. Davis Decl. ¶ 30; Pl.'s Counter 56.1 ¶ 16. Moreover, Station Supervisor Level I's, such as Abdullah, "have no authority to discipline employees" or discretion to "determine what action to take against an employee." Davis Decl. ¶ 65 n.5; Abdullah Decl. ¶¶ 13–14. As a result, once Abdullah's report was forwarded to Cynthia Davis, the Transit Authority's Assistant Chief Officer for the Division of Stations, Ms. Davis determined that there was sufficient evidence to charge Plaintiff with sleeping on duty, and accordingly recommended dismissal and served Plaintiff with notice of the charges against him. Davis Decl. ¶¶ 68–69.

**B. The Parties Engage in Disciplinary Due Process and Binding Arbitration**

On December 23, 2013, the same day Plaintiff was suspended, the hearing constituting the first step of the disciplinary process was held. Pl.'s Counter 56.1 ¶ 23. During the hearing,

5

Plaintiff presented a letter from his doctor, dated that same day, which verified that Plaintiff suffered from depressive disorder, that he had been taking Fluphenazine three times per day for the past ten years, and that a side effect of Fluphenazine is drowsiness. *Id.* ¶ 25. This information was subsequently relayed to Davis, who later testified that the revelation of Plaintiff's medical condition would not have altered her decision to seek dismissal. *Id.* ¶¶ 26, 134; Declaration of Michael Coviello, Doc. 53, Ex. C. at 18:5–18. The hearing officer sustained the disciplinary charge and recommended termination, a decision which was again sustained at the second and third step of the disciplinary process. Pl.'s Counter 56.1 ¶ 28, 133; Davis Decl., Ex. W. Accordingly, on December 30, 2013, Plaintiff appealed his case to arbitration in accordance with his collective bargaining agreement. Pl.'s Counter 56.1 ¶¶ 28, 142; Davis Decl., Ex. W at 3. Prior to the arbitration proceedings, however, Plaintiff filed a charge of discrimination against the Transit Authority with the Equal Employment Opportunity Commission ("EEOC"), on February 7, 2014. Pl.'s Counter 56.1 ¶ 32. The charge alleged that the Transit Authority was "seeking to terminate [Plaintiff's] employment with complete disregard as to how treating [his] medical condition caused [him] to be drowsy." *Id.* ¶ 33.

On February 13, 2014 and March 13, 2014, as the final step of the disciplinary process, Plaintiff had a hearing (the "Arbitration Hearing") before an impartial arbitrator duly selected by the Transit Authority and Plaintiff's union to determine whether Plaintiff was wrongfully terminated in violation of the collective bargaining agreement. *Id.* ¶ 29; Davis Decl., Ex. B. The arbitrator issued a decision on April 16, 2014 (the "Arbitration Decision"), concluding that the Transit Authority had just cause to terminate Plaintiff. Davis Decl., Ex. B. In pertinent part, the arbitrator concluded that, in view of Plaintiff's "numerous and increasingly lengthy disciplinary suspensions between 2003 and 2012," his final warning of dismissal, and "the absence of any

report from Beaton that since 1995, he had advised the Transit Authority of a disability, or that at any time he had sought an accommodation based upon his reported disability," the Transit Authority had a "clear basis" for dismissing Plaintiff for "violating the Final Warning provision" of the settlement agreement. *Id.* at 7.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F.Supp.2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14,

18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F.Supp.2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

## III. DISCUSSION

### A. Discriminatory Termination

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Employment discrimination claims under the ADA are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 766 (2d Cir. 2015); *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). In order to establish a prima facie case of discrimination under the ADA, the plaintiff must demonstrate that: (1) his employer is subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *McMillan*, 711 F.3d at 125. If a plaintiff meets this minimal *prima facie* burden and obtains the temporary presumption of discriminatory intent, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Dawson*, 624 F. App'x at 766; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). If the employer articulates such a reason, the burden then shifts back to the employee

8

to show that the employer's reason was pretext. *Dawson*, 624 F. App'x at 766; *Vega*, 801 F.3d at 83.

Because Defendant does not contest the first two elements of the *prima facie* ADA claim,[3] the only issues are whether Plaintiff was qualified to perform the essential functions of his job with or without a reasonable accommodation, and whether there is a plausible inference he was terminated because of his disability. As the Court previously concluded that Plaintiff has shown that he was qualified to perform the essential functions of his job, *Beaton*, 2016 WL 3387301 at *6, it turns first to the question of whether the record before the Court gives rise to an inference that Plaintiff was terminated on account of his disability.[4]

### a. Whether Plaintiff was Terminated Because of His Disability

Defendant asserts that Plaintiff has not and cannot demonstrate that he suffered an adverse employment action because of his disability. For support, Defendant principally relies on the arbitrator's finding that Beaton engaged in sleeping on duty, which, in view of the final warning Beaton had previously received, constituted a sufficient basis for his firing. Defendant therefore contends that the arbitration decision demonstrates an absence of discriminatory intent. Def.'s Mem. at 13–14; Davis Dec., Ex. B. The Court agrees.

At the motion to dismiss stage, the Court was obligated to accept Plaintiff's allegations as true, and therefore concluded that Plaintiff had plausibly alleged that he was terminated because

---

[3] Moreover, the Court previously determined that Plaintiff has demonstrated he is a disabled individual for the purposes of the ADA. *Beaton*, 2016 WL 3387301 at *5.

[4] "[T]he Transit Authority's defense may be viewed either as an attack on [Plaintiff's] showing of an inference of discrimination or retaliation in the *prima facie* case or as an attack on [P]laintiff's satisfaction of the subsequent requirement that a proffered legitimate reason for an employment action be shown to be pretextual. Because issues of this nature tend to collapse as a practical matter under the *McDonnell Douglas* framework, [the Court] treat[s] the Transit Authority's defense as an attack on [Plaintiff's] *prima facie* case." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (citations omitted). The defense would, however, apply equally to "an attack on a claim of pretext." *Id.*

of his disability. *Beaton*, 2016 WL 3387301 at *7 (citing *Doe v. Norwich Free Acad.*, No. 10 Civ. 1171 (SRU), 2012 WL 5383343, at *4 (D. Conn. Oct. 31, 2012) ("[A] plaintiff may establish a prima facie case by showing she was fired 'because of' manifestations of her disability."); *McMillan*, 711 F.3d at 129 ("Here, it is undisputed that McMillan was tardy because of his disability and that he was disciplined because of his tardiness. In other words, McMillan was disciplined because of his disability.")). That conclusion turned in large part on the Court's unwillingness to accord preclusive effect to the arbitrator's finding that Plaintiff was properly terminated for sleeping on duty, or to consider extrinsic evidence that Plaintiff had otherwise committed a fireable offense or violated the final warning agreement. *Beaton*, 2016 WL 3387301 at *4–6, 8 (citing *Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 185 (E.D.N.Y. 2006) (noting that at the motion to dismiss stage, "[a] court may take judicial notice of an opinion issued in a prior proceeding, but 'only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion'") (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

At the summary judgment phase, however, and as Plaintiff readily concedes, Pl.'s Opp. at 13–14, the Court may, within its discretion, give preclusive effect to the arbitrator's decision, *Giles v. City of New York*, 41 F. Supp. 2d 308, 313 (S.D.N.Y. 1999), or accord that decision "such weight as [it] deems appropriate.'" *Id.* (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO*, 954 F.2d 801, 809–10 (2d Cir. 1992)). Having reviewed that decision and the record evidence adduced by the parties in discovery, the Court concludes that the arbitrator's decision should be afforded preclusive effect on the issue of whether Plaintiff was sleeping on duty, and accorded substantial probative weight in determining whether the circumstances of Plaintiff's termination give rise to an inference of discrimination.

The Court bases this determination on several factors outlined in the Second Circuit's decision in *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (affirming district court's grant of summary judgment to employer on the grounds that the arbitrator's "decision, [was] based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination").

      *i.   The Arbitrator's Decision is Based on Substantial Evidence and there is no Indication that the Arbitrator's Impartiality was Compromised.*

First, the arbitrator's decision was based on "substantial evidence." *Id.* Based on Abdullah's testimony, and the corroborating pictures she took of Plaintiff with his eyes closed and his head in his hand, the arbitrator concluded that the record evidence "clearly establishe[d]" that Plaintiff was in fact guilty of the operational violation of sleeping on duty. Davis Dec., Ex. B at 4–6. The arbitrator further concluded that Plaintiff had not rebutted that evidence by claiming that he was not sleeping but had only closed his eyes momentarily because he was feeling drowsy. *Id.* at 5; Pl.'s Counter 56.1 ¶¶ 185–86.

Having concluded that Plaintiff was sleeping, the arbitrator had little difficulty concluding that termination was appropriate. As the arbitrator acknowledged, Plaintiff had previously received a final warning on December 10, pursuant to which Beaton agreed that "any further Operational violation(s) shall lead to [his] dismissal." Davis Dec., Ex. A; *id.*, Ex. B at 6. Thus, the arbitrator concluded that Plaintiff's December 23 misconduct of sleeping on duty was an operational violation that "violated the terms of his Final Warning," providing a basis for dismissal, which was "clearly neither shocking nor disproportionate." Davis Dec., Ex. B at 6. The arbitrator also rejected Plaintiff's contention that he should have been afforded an accommodation. In reaching that conclusion, the arbitrator noted that aside from a "vague statement" that Plaintiff had advised the Transit Authority of his disability in 1995, there was no

indication that Plaintiff had reported his disability in the 18 years since, and no record whatsoever that Plaintiff had requested an accommodation prior to his December 23 suspension. The arbitrator found this fact particularly glaring in light of Plaintiff's extensive disciplinary record, which incudes of 35 disciplinary charges of misconduct since 2000. *Id.*; Pl.'s Counter 56.1 ¶ 88. Tellingly, following discovery in this action, Plaintiff still has not claimed that he otherwise informed the Transit Authority of his disability or requested an accommodation prior to his December 23 charge for sleeping on duty. *See* Pl.'s Counter 56.1 ¶ 167 (conceding that other than in 1995, he had not informed the Transit Authority of his disability prior to being charged with sleeping on duty); Thompson Declaration, Doc. 46, Ex. 4 at 79:1–8 (same).

Second, the arbitral decision was rendered by an impartial arbitrator duly selected by the Transit Authority and Plaintiff's union in accordance with Plaintiff's collective bargaining agreement. Pl.'s Counter 56.1 ¶ 29; Davis Decl., Ex. B. The Second Circuit has previously recognized that "the [collective bargaining agreement] established this process both to deprive the Transit Authority of the power to terminate an employee unilaterally and to ensure fair and probatively sound decisions for aggrieved employees." *Collins*, 305 F.3d at 119. During the course of Plaintiff's two-day Arbitration Hearing, he was represented by counsel, and presented evidence and testimony on his behalf. Davis Decl., Ex. B at 1. Plaintiff does not claim that the arbitrator was in any way biased or impartial. *See* Pl.'s Opp. at 13–15. Accordingly, the Court finds that Plaintiff's "termination occurred . . . only after a decision, based on substantial evidence, of an undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination." *Id.* Under those circumstances the arbitrator's decision "is highly probative of the absence of discriminatory intent in that termination." *Id.*

> ii. *Plaintiff has failed to Show the Arbitrator's Decision was Wrong as a Matter of Fact.*

Moreover, the Court finds that none of the disputed facts in this case undermine the substantial evidence relied on by the arbitrator or supports an inference of discriminatory intent. For example, although Plaintiff now claims that he was neither sleeping nor meditating, Pl.'s Counter 56.1 ¶ 187; Pl.'s Opp. at 23, he continues to concede that "he was feeling drowsy" and "closed his eyes to regain his composure," *id.* ¶ 185. Given Abdullah's statement and the pictures corroborating Abdulla's account, the Court has no issue concluding that the arbitrator's decision was supported by the record. Even accepting Plaintiff's version of the events, the Court has no trouble concluding that Plaintiff was in violation of the Rule 11(e), which requires "[e]mployees to give their undivided attention to the proper performance of their duties" and informs them that they "must not sleep, loaf or lounge on or off duty on Authority property." Davis Decl., Ex. F, Rule 11(e). The Transit Authority has a practice of enforcing this rule precisely because of "media reports featuring photos or video of employees sleeping while on duty." *Id.*, Ex. G. Therefore, regardless of Plaintiff's subjective explanation regarding his conduct, as the multiple photographs taken by Abdullah well illustrate, *see* Davis Decl., Ex. S, the objective perception of Plaintiff's action was that he was sleeping and not giving his "undivided attention to the proper performance of his duties." Davis Decl., Ex. F, Rule 11(e). This is precisely the kind of conduct Rule 11(e) is intended to deter.

Likewise, Plaintiff's claim that he showed Abdullah his prescription medication, thereby triggering his right to an accommodation and raising an inference of discrimination, does not alter the Court's conclusion. Pl.'s Opp. at 3–4, 23. Even on Plaintiff's rendition of the facts, he only alleges that he offered this explanation *after* Abdullah took the pictures of him with his eyes closed and "accused [him] of sleeping on duty." Pl.'s Counter 56.1 ¶ 186. The Transit

Authority's Rules of Conduct prohibit employees from sleeping on duty, Davis Decl. ¶ 6, n.2; *id.* Ex. F, Rule 11(e), and Station Supervisor Level I's, such as Abdullah, have no discretion to "determine what action to take against an employee," Davis Decl. ¶ 65 n.5; Abdullah Decl. ¶¶ 13–14. As a result, Abdullah was required to report the incident to Cynthia Davis, who then determined that there was sufficient evidence to charge Plaintiff with sleeping on duty, and accordingly recommended dismissal. Davis Decl. ¶¶ 68–69; *id.* Ex. U (demonstrating that the disciplinary notification, which Plaintiff appealed, recommended dismissal). As the Court previously recognized, "[n]one of the ADA, NYHRL, or NYCHRL 'immunize[s] disabled employees from discipline or discharge for incidents of misconduct in the workplace,' even if that misconduct is a 'manifestation' of a disability." *Beaton*, 2016 WL 3387301 at *8 n.8 (quoting *Krasner v. City of New York*, No. 11 Civ. 2048 (PGG), 2013 WL 5338558, at *12–13 (S.D.N.Y. Sept. 23, 2013) (collecting cases), *aff'd*, 580 F. App'x 1 (2d Cir. 2014)). Under these circumstances, Plaintiff cannot claim entitlement to an accommodation for the purpose of excusing his past misconduct. *See McElwee v. Cty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("[U]nder the ADA, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability. A requested accommodation that simply excuses past misconduct is unreasonable as a matter of law.") (footnote omitted); U.S. Equal Emp't Opportunity Comm'n, Enforcement Guidance: *Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*. 2002 WL 31994335, at Question 36 (2002) ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.").

Likewise, there is no indication that this sequence of events rebuts the presumption of impartiality the Court accords the arbitrator's decision. In addition to Abdullah only learning of Plaintiff's disability after she accused him of sleeping and had no discretion to decline reporting Plaintiff's conduct, Plaintiff advances no evidence demonstrating that his disability factored into the Transit Authority's decision to commence disciplinary proceedings against him. As Davis's testimony demonstrates, at the time she prepared Plaintiff's disciplinary charge, she "had no knowledge" of Plaintiff's disability. Davis Decl. ¶¶ 69–73. The admissible record evidence thus supports Defendant's contention that Plaintiff's disability played no role in the Transit Authority's initial decision to suspend him and pursue charges against him. Given this background, it is purely conclusory for Plaintiff to claim that his explanation of his disability at Step I of the Authority's hearing was "one of the motivating factors" in his termination. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995); *cf. Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 289–90 (S.D.N.Y. 2013) ("'[e]mployers need not suspend previously planned [actions]' once a plaintiff has engaged in protected activity.") (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

Nor is the Court persuaded by Plaintiff's attempt to distinguish *Collins* from the instant action. Plaintiff claims that "Collins involved a finding of fact directly relevant to the employee's accused misconduct, an assault on a fellow employee." Pl.'s Opp. at 14. As Defendant notes, Def.'s Reply at 11, that is "precisely" what happened here; the arbitrator made a factual finding directly relevant to Plaintiff's accused misconduct, i.e., whether Plaintiff was sleeping on duty. The fact that the arbitrator declined to hear evidence on Plaintiff's disability does not undermine the arbitrator's determination that Plaintiff was found sleeping on duty, or call into question the arbitrator's impartiality.

15

\* \* \*

Plaintiff has failed to "present strong evidence that the [arbitrator's] decision was wrong as a matter of fact—e.g. new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised." *Collins v. New York City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002). The Court therefore gives preclusive effect to the arbitrator's determination that Plaintiff was sleeping on duty. The Court also finds that the impartial decision of the arbitrator "attenuate[s]" any claim of discriminatory intent against the Transit Authority, *id.*, and, in view of the record evidence as a whole, concludes that the "circumstances of [Plaintiff's] termination do not give rise to or support an inference of discrimination" *id.* at 118. Accordingly, Defendant's motion for summary judgment on Plaintiff's discrimination claim must be granted.

### B. Retaliation Claims

Plaintiff further claims the Transit Authority violated the ADA by retaliating against Plaintiff for challenging his discriminatory termination. To establish a *prima facie* case of retaliation under the ADA, Plaintiff must show that "(1) the employee was engaged in an activity protected by [the statute], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *14 (S.D.N.Y. Feb. 5, 2016) (quoting *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)) (internal quotation marks omitted).

Plaintiff alleges that he engaged in two different protected activities. First, Plaintiff alleges that he engaged in protected activity by "opposing Defendant's accusation" that he was sleeping on duty. Plaintiff claims that he opposed that accusation when he "told [Abdullah] that

16

he was taking medication to treat his disability" after she "accused him of sleeping on duty" and by offering evidence of his disability during the Transit Authority's disciplinary process. Pl.'s Opp. at 20. Second, Plaintiff argues that his filing a charge for discrimination with the EEOC on February 7, 2014 was a protected activity that caused the Transit Authority to retaliate by terminating him. *Id.* Setting aside the question of whether Plaintiff's activities are protected, the Court concludes that Plaintiff has failed to establish a "causal connection between the protected activity and the adverse employment action." *Moore*, 2016 WL 825001, at *14 (quoting *Sarno*, 183 F.3d at 159) (internal quotation marks omitted).

Just as the arbitrator's determination attenuates the inference of discrimination with respect to Plaintiff's discrimination claim, it likewise weakens the causal link between the protected activity claimed here and Plaintiff's adverse employment action. *See Collins*, 305 F.3d at 118–119 (concluding that because the "ultimate termination" turned on the "decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing," "the circumstances of [plaintiff's] termination do not give rise to or support an inference of *discrimination* or *retaliation*") (emphasis added).[5]

Moreover, each of Plaintiff's claims of retaliation were preceded by the commencement of dismissal proceedings. Plaintiff therefore cannot show that there is a causal connection between his protected activity and his adverse employment action. Plaintiff appears to rely only on the temporal proximity between his claimed protected activity and his termination to satisfy the causal connection prong of his retaliation claim. However, as noted above, Plaintiff's initial opposition to Abdullah's claim that he was sleeping occurred only after she had found him

---

[5] Although *Collins* concerned discrimination and retaliation claims under Title VII, 305 F.3d at 115, rather than the ADA, the same framework applies to analyzing such claims under the ADA. *See Sarno*, 183 F.3d at 159 (noting that "it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA").

17

sleeping, Pl.'s Counter 56.1 ¶ 186, and was obligated to report his behavior, Davis Decl. ¶ 65 n.5. Thus, even assuming that activity was protected, it could not have formed the basis for Abdullah's recommendation of disciplinary charges against Plaintiff.

Likewise, other than notifying the Transit Authority of his disability in 1995, which is far too temporally attenuated to serve as the basis of a retaliation claim, *cf. Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (finding that "three-week period from [plaintiff's] complaint to her termination [wa]s sufficiently short to make a prima facie showing of causation"); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.") (citations omitted), Plaintiff does not contend that Davis was aware of his disability at the time she prepared the charge recommending his dismissal, Pl.'s Counter 56.1 ¶ 22. And Plaintiff concedes that the report Abdullah provided to Davis "did not include Plaintiff's statement that he was feeling drowsy due to his medication." Pl.'s Opp. at 17. As such, Davis's initiation of dismissal proceedings against Plaintiff could not have been causally related to Plaintiff's disability.

Finally, at the time that Plaintiff offered evidence of his disability at Step I of the disciplinary hearing, Davis had already determined that there was sufficient evidence to charge Plaintiff with sleeping on duty and recommended his dismissal. Davis Decl. ¶¶ 68–69; *id.* Ex. U (demonstrating that the disciplinary notification, which Plaintiff appealed, recommended dismissal). Accordingly, since Plaintiff's protected activity occurred "after charges were issued" he "cannot plausibly suggest retaliation because the formal disciplinary process had already commenced before [his] complaint was made." *Colon*, 983 F. Supp. 2d at 289. The same holds

true for Plaintiff's filing of his EEOC complaint, which occurred only after he appealed the Transit Authority's unfavorable determination. Pl.'s Counter 56.1 ¶¶ 32–33. As "'[e]mployers need not suspend previously planned [actions]' once a plaintiff has engaged in protected activity," *Colon*, 983 F. Supp. 2d at 290 (quoting *Clark Cty. Sch. Dist.*, 532 U.S. at 272), the Transit Authority's determination to defend its decision in the face of Plaintiff's appeal does not, on the facts presented here, satisfy the causal connection requirement. The Court therefore grants Defendant's motion for summary judgment with respect to Plaintiff's retaliation claim.

## IV. CONCLUSION

Defendant's motion for summary judgment is hereby GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 44, and close the case.[6]

It is SO ORDERED.

Dated: March 2, 2018
New York, New York

Edgardo Ramos, U.S.D.J.

---

[6] Summary judgment is also granted with respect to Plaintiff's disability discrimination and retaliation claims under the NYHRL and the NYCHRL for the same reasons that Plaintiff's ADA claim fails as a matter of law. *See Molina v. City of Rochester*, No. 13 Civ. 6607, 2017 WL 1194493, at *11 (W.D.N.Y. Mar. 30, 2017) (recognizing that the analysis of "discrimination and retaliation claims brought under the [NYHRL] . . . . is substantially the same as [the] analysis under the ADA); *Holcombe v. U.S. Airways Grp., Inc.*, 976 F. Supp. 2d 326, 348–49 (E.D.N.Y. 2013) ("Although the elements of a *prima facie* case for retaliation differ slightly between the ADA, NYSHRL, and NYCHRL, under all three statutes Plaintiff must show a causal connection exists between the alleged adverse action and the protected activity...."); *Sista v. CDC Ixis N. Am., Inc.*, No. 02 Civ. 3470 (GBD), 2005 WL 356973, at *6 n.7 (S.D.N.Y. Feb. 15, 2005) (granting summary judgment on disability discrimination claims under the NYHRL and the NYCHRL for the same reasons that Plaintiff's ADA claim fails as a matter of law"); *Arena v. Agip USA Inc.*, No. 95 Civ. 1529 (WHP), 2000 WL 264312 at *7 (S.D.N.Y. Mar. 8, 2000) (noting that establishing prima facie case of disability under the NYHRL and the NYCHRL is the same as that under the ADA).